1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   BRADLEY JAMES MUCH,                    Case No. CV 16-0863 VAP (SS)

12                    Plaintiff,      **MEMORANDUM AND ORDER**

13        v.                          **DISMISSING COMPLAINT WITH**

14   MICHAEL LANGSTON, et al.,         **LEAVE TO AMEND**

15                    Defendants.

16

17                              **I.**

18                         **INTRODUCTION**

19

20        On March 11, 2016, Bradley James Much ("Much"), a California

21   resident proceeding <u>pro se</u>, filed a First Amended Complaint

22   ("FAC") alleging violations of his civil rights pursuant to 42

23   U.S.C. § 1983.  Plaintiff is proceeding <u>in forma pauperis</u> ("IFP")

24   pursuant to the Court's Order granting Plaintiffs' IFP request on

25   February 12, 2016.  (Dkt. No. 6).  In civil actions where the

26   plaintiff is proceeding IFP, Congress requires district courts to

27   dismiss the complaint "at any time" if the court determines that

28

the complaint, or any portion thereof, (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); see also Lopez v. Smith, 203 F.3d 1122, 1126—27 n.7 (9th Cir. 2000) (en banc).

When a plaintiff appears pro se in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt.  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).  In giving liberal interpretation to a pro se complaint, however, the court may not supply essential elements of a claim that were not initially pled.  Byrd v. Maricopa County Sheriff's Dep't, 629 F.3d 1135, 1140 (9th Cir. 2011).  A court must give a pro se litigant leave to amend the complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  Akhtar, 698 F.3d at 1212 (internal quotation marks omitted); Lira v. Herrera, 427 F.3d 1164, 1176 (9th Cir. 2005).  However, if amendment of the pleading would be futile, leave to amend may be denied.  See Ventress v. Japan Airlines, 603 F.3d 676, 680 (9th Cir. 2010).

For the following reasons, the Court finds that the instant Complaint fails to state a cognizable claim for relief and must be dismissed.  However, leave to amend is granted.[1]

---

[1]  Magistrate judges may dismiss a complaint with leave to amend without approval of the district judge.  See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

2

II.

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff sues the following eight Defendants: Signal Hill Police Department Officers (1) Chief Michael Langston, (2) Officer Donald Moreau, (3) Officer Brian Moulton, and (4) Officer Terrence Nadal; (5) Dr. Hiruy H. Gessesse, MD, staff psychiatrist at College Medical Center Long Beach and Community Hospital of Long Beach; (6) Dr. Gadson Johnson, staff psychiatrist at College Medical Center of Long Beach; (7) Dr. Azad Kurjian, MD, staff psychiatrist at Community Hospital of Long Beach; and (8) John Bishop, CEO of Community Hospital of Long Beach. (FAC, Dkt. No. 10, at 2—3). The FAC does not specifically state whether Defendants are sued in their individual or official capacities. (Id. at 28).

On December 28, 2014, Defendant Moreau requested entry into Plaintiff's home and placed Plaintiff into custody for a 72-hour involuntary hospitalization for psychiatric evaluation and treatment, pursuant to California Welfare and Institutions Code § 5150. (FAC at 3). According to a copy of the "Application for 72-Hour Detention for Evaluation and Treatment" that Plaintiff attached to the FAC, Officer Moreau believed that Plaintiff was "a danger to himself/herself" and "a danger to others" based on his "delusional behavior." (Id. at 11, Ex. A). Plaintiff had claimed people were breaking into his apartment and stealing his shirts, "gaslighting" him, spying, and listening in on him. (Id.) Plaintiff was called to the officer's attention when he

gave a note to a store owner claiming he was being held against
his will at home and wanted the FBI contacted because he felt the
Signal Hill Police Department was involved.  (Id.).  On December
31, 2014, Dr. Gessesse certified Plaintiff for intensive
treatment and extended involuntary confinement, indicating that
he was a danger to himself and gravely disabled as a result of a
mental disorder or impairment characterized by "poor impulse."
(Id. at 13, Ex. B).

    On January 10, 2015, Officer Nadal placed Plaintiff on
another 72-hour involuntary hold at the Community Hospital of
Long Beach.  (Id. at 3—4).  Officer Nadal indicated that
Plaintiff had called the Long Beach Police Department and stated
that "people were going to kill him with a gun" and that he heard
voices coming from his balcony.  (Id. at 15, Ex. C).  According
to Officer Nadal, Plaintiff had taken his belongings and left his
residence with no money and stated that he would not go back
home.  (Id.).  On January 12, 2015, Plaintiff presented a
handwritten "Petition for Writ of Habeas Corpus" to a subordinate
employee of Mr. Bishop at the Community Hospital of Long Beach,
demanding release from confinement.  (Id. at 4, 17, Ex. D).
According to Plaintiff, the subordinate failed to respond to his
petition.  (Id. at 4).

    On January 17, 2015, Officer Nadal requested entry into
Plaintiff's home and placed Plaintiff on another 72-hour
involuntary hold.  (SAC at 4).  Officer Nadal indicated that
Plaintiff had called the Signal Hill Police Department because he

1  was concerned that his upstairs neighbors were trying to kill

2  him. (Id. at 22, Ex. E). Officer Nadal stated that when he

3  arrived at Plaintiff's home, a neighbor showed him two stairwell

4  fire exits that were allegedly barricaded by Plaintiff causing

5  them to be inoperable in the event of an emergency. (Id.). On

6  January 18, 2015, Plaintiff attempted to present to an

7  unidentified subordinate of Mr. Bishop a "Petition for Writ de

8  Habeas Corpus" demanding his release from Community Hospital of

9  Long Beach. (Id.). The subordinates refused to accept

10 Plaintiff's petition. (Id. at 4, 25, Ex. F). On January 20,

11 2015, Dr. Gessessee certified Plaintiff for intensive treatment

12 and extended involuntary confinement, indicating that Plaintiff

13 was gravely disabled and "cont[inues] to have poor impulse[,]

14 poor judgment, [and] lack[] [of] coping skills." (Id. at 33, Ex.

15 G).

16

17    On January 25, 2015, Officer Moulton detained Plaintiff

18 while walking on Molino Avenue in Signal Hill, forced him to sit

19 and remain on the curb, and questioned him about three instances

20 where Plaintiff knocked on the door of a residence. (FAC at 5).

21 Officer Moulton placed Plaintiff on another 72-hour involuntary

22 hold. (Id.) According to the form filled out by Officer Moulton

23 and submitted with the FAC, Plaintiff's neighbors had called and

24 complained that Plaintiff blocked the fire exits in the building,

25 came to their house several times looking for people who do not

26 live there, and scared several neighbors by telling them he had

27 people held hostage. (FAC at 37, Ex. H). Plaintiff alleges that

28

1   Officer Moulton never asked Plaintiff about these statements
2   prior to placing him in custody.  (Id. at 5).

3

4      On January 30, 2015, Officer Moureau detained Plaintiff,
5   prevented Plaintiff from entering his own residence, and
6   questioned Plaintiff regarding his mental health and an emergency
7   call to the property.  (FAC at 5).  Officer Moureau placed
8   Plaintiff on another 72-hour hold after discovering that the fire
9   alarm in Plaintiff's building had been activated and the fire
10  alarm that had been pulled was next to Plaintiff's front door.
11  (Id. at 40, Ex. I).  Additionally, Officer Moureau observed that
12  the fire exit in the building had been barricaded with wood, that
13  there was no electricity in Plaintiff's apartment and that he was
14  using extension cords to draw power from the common hallway, and
15  that Plaintiff refused to show whether he had his prescribed
16  medications.  (Id. at 40, Ex. I).  Officer Moureau indicated that
17  Plaintiff was "a danger to others" and a "gravely disabled
18  adult."  (Id.).  On February 1, 2015, Dr. Kurjian certified
19  Plaintiff for intensive treatment and continued involuntary
20  confinement at Community Hospital of Long Beach.  (Id. at 6, 43,
21  Ex. J).

22

23     On February 3, 2015, Dr. Kurjian submitted a Riese petition,
24  which indicates that Plaintiff was showing symptoms of chronic
25  paranoid schizophrenia.  (Id. at 6, 45, Ex. K).  Dr. Kurjian
26  opined that Plaintiff was not aware of his mental disorder, not
27  able to understand the risks or benefits of medication or

28

1   alternative treatments, and not able rationally to understand and

2   evaluate information regarding informed consent. (Id. at 46).

3

4       Plaintiff submitted a letter to Dr. Kurjian consisting of

5   his "conditional consent" to medication for schizophrenia,

6   provided that Dr. Kurjian accept liability if his diagnosis is

7   incorrect, perform an MRI and EKG prior to beginning therapy,

8   verify that "no or minimal risk" exists based on previous blood

9   tests and other prescribed medications, and that Plaintiff

10  undergo a full psychiatric and psychological evaluation by his

11  regular psychiatrist and therapist. (FAC at 48—49, Ex. L).

12  Plaintiff alleges that Dr. Kurjian did not respond to this

13  letter. (Id. at 6).

14

15      On February 4, 2015, a Riese hearing was held, and an

16  administrative judge found that Plaintiff did not have the

17  capacity to give an informed refusal to psychiatric medication

18  and therefore could be medicated against his will. (FAC at 6,

19  54, Ex. M). Plaintiff presented a "Writ of Habeas Corpus" to a

20  staff member of Community Hospital of Long Beach. (Id. at 6—7,

21  56, Ex. O). Plaintiff alleges that subordinates of Mr. Bishop

22  failed to act on the petition. (Id. at 6).

23

24      Plaintiff asserts six claims under section 1983. First,

25  Plaintiff asserts that Defendants Moreau and Nadal deprived him

26  of his First Amendment right to freedom of speech by placing

27  Plaintiff into custody for statements that did not indicate the

28  proper criteria for detention (Count I). (FAC at 7). Second,

7

1    Plaintiff contends that Officers Moreau, Moulton, and Nadal
2    violated Plaintiff's Fourth Amendment right to be free from
3    unreasonable searches and seizures (Count II).   (FAC at 7).
4    Plaintiff asserts that Defendant Langston is liable for
5    permitting these acts and for failing to train subordinate
6    officers.  (Id.).   Third, Plaintiff asserts a Fourth Amendment
7    unlawful confinement claim against Defendants Gessessee and
8    Kurjian.  (Id. at 8).   Fourth, Plaintiff contends that Defendants
9    Moreau, Moulton, and Nadal violated Plaintiff's Fourteenth
10   Amendment rights under the Equal Protection Clause, for detaining
11   Plaintiff based on a diagnosis instead of a set of circumstances.
12   (Id. at 8).   Fifth, Plaintiff claims that Defendants Johnson and
13   Kurjian violated Plaintiff's Fourteenth Amendment rights to Due
14   Process by failing to conduct a "multi-disciplinary" psychiatric
15   evaluation pursuant to Section 5008(a) of the Welfare and
16   Institutions Code, to justify Plaintiff's 72-hour involuntary
17   hospitalizations.   Plaintiff alleges that Defendant Bishop is
18   also liable for permitting Defendants Johnson and Kurjian to
19   detain him.  (Id.).   Sixth, Plaintiff asserts that subordinates
20   of Defendant Bishop violated Plaintiff's right to counsel under
21   the Sixth Amendment by denying his request for counsel during the
22   Riese hearing.  (Id. at 6, 9).   Plaintiff seeks compensatory,
23   general and special damages, as well as any further relief that
24   the court "may deem appropriate."  (Id. at 9).

8

III.

**DISCUSSION**

**A.    Plaintiff Fails to State A Civil Rights Claim Against Non-State Actors Gessesse, Johnson, Kurjian, and Bishop**

To state a claim under section 1983, a plaintiff must allege that the deprivation of a right secured by the federal constitution or statutory law was committed by a person acting under color of state law.  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "While generally not applicable to private parties, a § 1983 action can lie against a private party when he is a willful participant in joint action with the State or its agents."  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).

The Ninth Circuit has identified four circumstances under which a private person may be said to be acting under color of state law.  Under the "public function" test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations."  Id. at 1093 (quoting Lee v. Katz, 276 F.3d 550, 554-55 (9th Cir. 2002)).  Under the joint action test, a court will consider whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity" and "knowingly accepts the benefits derived from unconstitutional behavior."  Kirtley, 326 F.3d at 1093 (quoting

1   *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th
2   Cir. 1995)).   Under the "governmental coercion or compulsion"
3   test, the court considers "whether the coercive influence or
4   'significant encouragement' of the state effectively converts a
5   private action into a government action." *Kirtley*, 326 F.3d at
6   1094 (quoting *Sutton v. Providence St. Joseph Medical Center*, 192
7   F.3d 826, 836-37 (9th Cir. 1999)).   Finally, under the
8   "government nexus" test, the court asks whether "there is such a
9   close nexus between the State and the challenged action that the
10  seemingly private behavior may be fairly treated as that of the
11  State itself." *Kirtley*, 326 F.3d at 1095 (quoting *Brentwood*
12  *Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S.
13  288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001)).

14

15      To demonstrate a civil rights violation against a government
16  official, a plaintiff must show either direct, personal
17  participation of the official in the harm or some sufficient
18  causal connection between the official's conduct and the alleged
19  constitutional violation.   *See Starr v. Baca*, 652 F.3d 1202,
20  1205-06 (9th Cir. 2011).   To be held liable, a supervising
21  officer has to personally take some action against the plaintiff
22  or "set in motion a series of acts by others . . . which he knew
23  or reasonably should have known, would cause others to inflict
24  the constitutional injury" on the plaintiff.   *Larez v. City of*
25  *Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal
26  quotations omitted).   Government officials may not be held liable
27  for the unconstitutional conduct of their subordinates under a
28  theory of respondeat superior.   *See Ashcroft v. Iqbal*, 556 U.S.

1  662, 676 (2009).    Rather, "[s]upervisory liability [may be]

2  imposed against a supervisory official in his individual capacity

3  [only] for his own culpable action or inaction in the training,

4  supervision, or control of his subordinates, for his acquiescence

5  in the constitutional deprivations of which the complaint is

6  made, or for conduct that showed a reckless or callous

7  indifference to the rights of others."  Preschooler II v. Clark

8  County Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007).

9

10      Plaintiff does not, and apparently cannot, allege that

11  Gessesse, Johnson, Kurjian, and John Bishop are government

12  employees acting under color of state law.   Nor has Plaintiff

13  alleged any facts showing that these Defendants were exercising a

14  traditionally and exclusively governmental function; that the

15  State incurred any benefit from these Defendants' actions; that

16  Defendants were not acting independently but under coercion of

17  the State; or that they had any official connection with the

18  State such that these Defendants' actions may be fairly

19  attributable to the State.    It appears that Gessesse, Johnson,

20  and Kurjian are private physicians, and Mr. Bishop is the CEO, of

21  a private hospital, which does not come within the color of state

22  law.  See Watkins v. Mercy Med. Center, 520 F.2d 894, 896 (9th

23  Cir. 1977) (private doctors normally do not come within the color

24  of state law).[2]   Plaintiff therefore fails to state a civil

25

26  [2] See also Skylstad v. Reynolds, 248 Fed. Appx. 808 (9th Cir.
   Sep. 20, 2007) (unpublished decision) (affirming district court's
27  order granting summary judgment to private hospital and two
   private doctors because they were not acting under the color of
28  state law).

1    rights claim against Gessesse, Johnson, Kurjian, and Bishop.
2    Accordingly, the Complaint must be dismissed with leave to amend.

3

4    **B.    Plaintiff Fails to State A Claim For Failure to Train and**
5         **Supervise, or Allege Personal Involvement of Michael**
6         **Langston in Any Alleged Violation**

7

8         In Count II, Plaintiff alleges that Michael Langston, by
     virtue of his position as Chief of Police of the Signal Hill
9
     Police Department, failed to supervise and provide adequate
10
     training for officers in detaining individuals for mental health
11
     evaluations. (FAC at 7—8). This claim fails to state a claim.
12

13
          To demonstrate a civil rights violation against a government
14
     official, a plaintiff must show either direct, personal
15
     participation of the official in the harm or some sufficient
16
     causal connection between the official's conduct and the alleged
17
     constitutional violation. See Starr, 652 F.3d at 1205-06. To be
18
     held liable, a supervising officer has to personally take some
19
     action against the plaintiff or "set in motion a series of acts
20
     by others . . . which he knew or reasonably should have known,
21
     would cause others to inflict the constitutional injury" on the
22
     plaintiff. Larez, 946 F.2d at 646 (internal quotations omitted).
23
     Government officials may not be held liable for the
24
     unconstitutional conduct of their subordinates under a theory of
25
     respondeat superior. See Iqbal, 556 U.S. at 676. Rather,
26
     "[s]upervisory liability [may be] imposed against a supervisory
27
     official in his individual capacity [only] for his own culpable
28

                                   12

1  action or inaction in the training, supervision, or control of

2  his subordinates, for his acquiescence in the constitutional

3  deprivations of which the complaint is made, or for conduct that

4  showed a reckless or callous indifference to the rights of

5  others." Preschooler, 479 F.3d at 1183.

6

7      The FAC does not allege facts to establish that Chief

8  Langston was aware of Plaintiff's alleged constitutional

9  deprivations or any other wrongful acts by the Signal Hill police

10 officers involved in Plaintiff's involuntary holds.   Moreover,

11 the FAC does not allege any specific facts showing that Chief

12 Langston's alleged deficient training and supervision had any

13 direct causal connection to the constitutional violations of

14 which Plaintiff complains.   Accordingly, the FAC must be

15 dismissed with leave to amend.

16

17 C.   **Plaintiff Fails to State A First Amendment Claim**

18

19     The First Amendment prohibits the government from "abridging

20 the freedom of speech." U.S. Const. amend. I, § 3.   In order to

21 make out a First Amendment claim under § 1983, a plaintiff must

22 show that a defendant "deterred or chilled [plaintiff's]

23 political speech and such deterrence was a substantial or

24 motivating factor in [the defendant's] conduct." Mendocino

25 Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir.

26 1999) (alterations in original) (internal quotation omitted).

27 However, "a plaintiff may not recover merely on the basis of a

28 speculative chill due to generalized and legitimate law

13

1    enforcement initiatives." <u>Id.</u> at 464. "To demonstrate

2    retaliation in violation of the First Amendment, [a plaintiff]

3    must ultimately prove first that [defendants] took action that

4    would chill or silence a person of ordinary firmness from future

5    First Amendment activities." <u>Dietrich v. John Ascuaga's Nugget</u>,

6    548 F.3d 892, 900-01 (9th Cir. 2008) (quoting <u>Skoog v. County of</u>

7    <u>Clackamas</u>, 469 F.3d 1221, 1231-32 (9th Cir. 2006)).

8

9        Plaintiff alleges that Defendants Moreau and Nadal placed

10   Plaintiff into custody as a result of statements he made to a

11   store owner and to the Long Beach Police Department. Plaintiff

12   fails to allege that this was protected speech under the First

13   Amendment, or that the alleged deterrence was a "substantial or

14   motivating factor" in the Defendants' conduct. Rather, the FAC

15   shows that Defendant Moreau and Nadal were fulfilling a

16   "legitimate law enforcement initiative[]," <u>Mendocino</u>, 14 F.3d at

17   44, by detaining Plaintiff pursuant to California Welfare and

18   Institutions Code § 5150 for being a potential danger to himself

19   or others. Accordingly, the FAC must be dismissed with leave to

20   amend.

21

22   **D.    <u>Plaintiff Fails to State An Equal Protection Claim</u>**

23

24       "To state a claim for violation of the Equal Protection

25   Clause, a plaintiff must show that the defendant acted with an

26   intent or purpose to discriminate against him based upon his

27   membership in a protected class." <u>Barren v. Harrington</u>, 152 F.3d

28   1193, 1194 (9th Cir. 1998) (citing, *inter alia*, <u>Washington v.</u>

14

1   <u>Davis</u>, 426 U.S. 229, 239—40, 96 S. Ct. 2040, 48 L. Ed. 2d 597

2   (1976)).    If  the  action  does  not  involve  a  suspect

3   classification, the plaintiff must show that similarly situated

4   people were intentionally treated differently without a rational

5   basis for the disparate treatment.  See <u>Vill. of Willowbrook v.</u>

6   <u>Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060

7   (2000); <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003).

8

9        The FAC lacks any allegations giving rise to an equal

10  protection claim.   Plaintiff does not identify himself as a

11  member of a protected class, nor does he identify a group of

12  similarly  situated  people  who  have  been  treated  differently.

13  Accordingly, the FAC must be dismissed with leave to amend.

14

15  **E.   Plaintiff's Claim That His Sixth Amendment Right To Counsel**

16       **Has Been Violated Fails Because This Right Only Applies to**

17       **Criminal Prosecutions**

18

19       The Sixth Amendment provides that "[i]n all criminal

20  prosecutions, the accused shall enjoy the right . . . to have the

21  Assistance of Counsel for his defense."  U.S. Const. amend. VI.

22  Because by its express terms, the Sixth Amendment right to

23  counsel applies only to criminal proceedings, Plaintiff has no

24  Sixth Amendment right to effective assistance of counsel in a

25  civil commitment proceeding.   See <u>Pokuta v. TWA</u>, 191 F.3d 834,

26  840 (7th Cir. 1999) ("[T]he well-settled general rule is that

27  there is no constitutional or statutory right to the effective

28  assistance of counsel in civil cases."); <u>United States v. Bodre</u>,

1   948 F.2d 28, 37 n. 7 (1st Cir.1991) ("It is well-settled that the

2   Sixth Amendment right to effective assistance of counsel applies

3   only to critical stages of criminal prosecutions.").

4

5       In California, individuals who are detained pursuant to

6   § 5150 and undergo a capacity hearing (Riese hearing) for refusal

7   of antipsychotic medication have a statutory right to

8   representation by an advocate or legal counsel. See Cal. Welf. &

9   Inst. Code § 5333(a). However, this does not provide Plaintiff

10  with a Sixth Amendment right to counsel. The Court dismisses

11  this claim with leave to amend, in the event Plaintiff can plead

12  a different cause of action based upon the denial of counsel.

13

14                              **IV.**

15                          **CONCLUSION**

16

17      For the reasons stated above, the First Amended Complaint is

18  dismissed with leave to amend. If Plaintiff still wishes to

19  pursue this action, he is granted **thirty (30) days** from the date

20  of this Memorandum and Order within which to file a Second

21  Amended Complaint. In any amended complaint, Plaintiff shall

22  **cure the defects** described above. **Plaintiff shall not include**

23  **new defendants or new allegations that are not reasonably related**

24  **to the claims asserted in the original complaint.** The Second

25  Amended Complaint, if any, shall be complete in itself and shall

26  bear both the designation "Second Amended Complaint" and the case

27  number assigned to this action. It shall not refer in any manner

28  to the original Complaint or the FAC. Plaintiff shall limit his

                                16

action only to those Defendants who are properly named in such a complaint, consistent with the authorities discussed above.

In any amended complaint, Plaintiff should confine their allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should make clear the nature and grounds for each claim and specifically identify the Defendants they maintain are liable for that claim. Plaintiff shall not assert any claims for which they cannot allege a proper factual basis.

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil**

\\
\\
\\
\\
\\

17

1  **Procedure 41(b). <u>Plaintiff is further advised that if he no</u>**

2  **<u>longer wishes to pursue this action, he may voluntarily dismiss</u>**

3  **<u>it by filing a Notice of Dismissal in accordance with Federal</u>**

4  **<u>Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is</u>**

5  **<u>attached for Plaintiffs' convenience.</u>**

6

7  DATED:  April 28, 2016

8

9                                                    /S/
                                      SUZANNE H. SEGAL
10                                     UNITED STATES MAGISTRATE JUDGE

11

12
    **THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT**
13
    **INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE**
14
    **SUCH AS WESTLAW OR LEXIS.**
15

16

17

18

19

20

21

22

23

24

25

26

27

28