**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRADLEY JAMES MUCH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DR. HIRUY H. GESSESSE, et al.,<br><br>　　　　　Defendants. | Case No. CV 16-0863 VAP(SS)<br><br>**MEMORANDUM AND ORDER DENYING MOTION TO DISMISS FOURTH AMENDED COMPLAINT WITHOUT PREJUDICE** |

**I.**

**INTRODUCTION**

On February 8, 2016, pro se plaintiff Bradley James Much ("Plaintiff") filed a civil rights complaint pursuant to 42 U.S.C. § 1983, as well as eight related Section 1983 actions. (See Dkt. Nos. 1, 6). On February 12, 2016, the Court consolidated the complaints in this action, and dismissed the consolidated complaint with leave to amend. (Dkt. No. 6).

On March 11, 2016, Plaintiff filed a First Amended Complaint, which the Court dismissed with leave to amend on April 28, 2016. (Dkt. Nos. 10, 12). On July 7, 2016, Plaintiff filed a Second Amended Complaint, which the Court dismissed with leave to amend on November 14, 2016. (Dkt. Nos. 19, 36).

On December 14, 2016, Plaintiff filed a Third Amended Complaint ("TAC"), naming as defendants Drs. Hiruy H. Gessesse and Azad Kurjian, and Signal Hill Police Department ("SHPD") Officers Donald Moreau, Brian Moulton and Terrence Nadal. (Dkt. No. 37). On April 10, 2017, the Court ordered the TAC served on the named defendants in their individual capacities. (Dkt. Nos. 38-40).

Plaintiff subsequently sought leave to amend the TAC, which the Court granted, and Plaintiff filed the pending Fourth Amended Complaint ("FAC") on June 8, 2017. (Dkt. Nos. 43-47).

On July 5, 2017, Officers Moreau, Moulton and Nadal (collectively "Defendants") filed a Motion to Dismiss the FAC ("Motion"). (Dkt. No. 54). On October 11, 2017, Plaintiff filed an Opposition to the Motion ("Opposition").[1] (Dkt. No. 62). For the following reasons, the Motion is DENIED. However, the Motion

---

[1] On September 8, 2017, the Court sua sponte extended the deadline for Plaintiff to file an Opposition or Notice of Non-Opposition to the Motion. (Dkt. No. 59). Even so, the Opposition is untimely. Nevertheless, since Plaintiff recently filed a document indicating he was repeatedly hospitalized in August and September 2017 (see Dkt. No. 61 at 4), the Court will consider Plaintiff's untimely Opposition. The Court emphasizes, however, that it would reach the same result regardless of Plaintiff's untimely Opposition.

2

is denied without prejudice to renewing Defendants' arguments in a motion for summary judgment.

## II.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on December 28, 2014, he was at home watching television when Officers Moreau and Nadal knocked on his door. Officer Moreau explained that he intended to take Plaintiff into custody for a psychiatric evaluation based on a note Plaintiff provided a consignment furniture store and police reports Plaintiff had submitted.[2] (FAC ¶ 9). "The note requested options for a quick transaction as Plaintiff was considering leaving the area due to an ongoing pattern of harassment which Plaintiff had reported to the [SHPD,]" while the police reports concerned "instances of suspected unlawful entry into Plaintiff's residence

---

[2] At the time of Plaintiff's detention, Cal. Welf. & Inst. Code § 5150 provided, in pertinent part, that:

> When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services.

Cal. Welf. & Inst. Code § 5150(a).

3

and theft of stolen property." (Id.). Officer Moreau then read Plaintiff the "legally required advisement" and Plaintiff was taken to College Medical Center in Long Beach. (Id.). Officer Moreau completed an Application for 72-Hour Detention for Evaluation and Treatment ("5150 application"), indicating that Plaintiff was a danger to himself and others. The complaint alleges that the officer failed to include any objective and observable facts supporting this conclusion. (FAC ¶ 9 & Exh. A).[3] Instead, the application included subjective statements from Plaintiff's neighbors who were biased against Plaintiff due to his sexual orientation and disability. (FAC ¶ 9). Plaintiff was placed on a 72-hour hold based solely on the 5150 application. (Id.).

Plaintiff asserts that on December 31, 2014, pursuant to Cal. Welf. & Inst. Code § 5250(a),[4] Dr. Gessesse certified Plaintiff for

---

[3] Plaintiff attached as exhibits to his FAC the five applications for 72-hour holds discussed in the FAC. (See FAC, Exhs. A-E). The Court can consider these documents in ruling on the Motion. See Wilhelm v. Rotman, 680 F.3d 1113, 1116 n.1 (9th Cir. 2012) ("'When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment.'" (citation omitted)); Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (9th Cir. 1991) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." (citations and internal punctuation omitted)).

[4] At the time of Plaintiff's detention, Welf. & Inst. Code § 5250 provided, in pertinent part, that:

> If a person is detained for 72 hours under [Welf. & Inst. Code § 5150, et al.,] . . . and has received an evaluation, he or she may be certified for not more than 14 days of intensive treatment related to the mental disorder or impairment by chronic alcoholism, under the

4

intensive treatment at College Medical Center for up to an additional fourteen days. The complaint alleges that Dr. Gessesse failed to comply with the legal requirements for such certification. (FAC ¶ 10). Ultimately, Plaintiff was hospitalized one additional day beyond the initial 72-hour hold. (Id.).

Plaintiff claims that on January 10, 2015, he was at home when he heard individuals threaten his physical safety while they were talking on the balcony directly above his balcony. (FAC ¶ 11). Plaintiff then left his home, walked to the city limits of Long Beach and placed a 911 call to report the threats. (Id.). Plaintiff indicates he "purposely walked into the city limits of Long Beach, outside the jurisdiction of the [SHPD,] so that the Long Beach Police Department would respond to Plaintiff's call[,]" and, after placing the call, Plaintiff remained in Long Beach. (Id.). Nevertheless, Officers Moreau and Nadal and an unidentified female officer responded to the call. (Id.). Plaintiff reported the threat to the officers, but they did not indicate any intent to investigate the threat. (Id.). Instead, Officer Nadal frisked Plaintiff and placed him in handcuffs, and Officers Moreau and Nadal took Plaintiff to Community Hospital in Long Beach. (Id.). When they reached the hospital, Officer Nadal read Plaintiff the

---

following conditions: [¶] (a) The professional staff of the agency or facility providing evaluation services has analyzed the person's condition and has found the person is, as a result of mental disorder or impairment by chronic alcoholism, a danger to others, or to himself or herself, or gravely disabled.

Cal. Welf. & Inst. Code § 5250(a).

5

"legally required advisement" and then completed a 5150 application in which Officer Nadal claimed Plaintiff was a danger to himself. According to the complaint, Officer Nadal failed to substantiate this conclusion with accurate, objective and observable facts. (FAC ¶ 11 & Exh. B). Instead, Officer Nadal falsely claimed Plaintiff contacted the SHPD and refused to return home. (Id.). Plaintiff was placed on a 72-hour hold based solely on the 5150 application. (FAC ¶ 11).

Plaintiff alleges that on January 17, 2015, Officers Moreau and Nadal went to Plaintiff's home, where Officer Nadal questioned Plaintiff about a blocked fire exit and a blocked interior door, but did not allow Plaintiff to respond to the questions. (FAC ¶ 12). Instead, Officer Nadal frisked and handcuffed Plaintiff, and then transported him to Community Hospital in Long Beach without reading him the "legally required advisement[.]" (Id.). Officer Nadal completed a 5150 application to hold Plaintiff as a danger to others. Again, the complaint alleges that Officer Nadal failed to support this conclusion with accurate facts. (FAC ¶ 12 & Exh. C). Instead, Officer Nadal incorrectly stated Plaintiff had contacted the SHPD and that Plaintiff's neighbor had directed Officer Nadal to the two blocked doors, claiming that Plaintiff was responsible. (Id.). Plaintiff was placed on a 72-hour hold based solely on the 5150 application. (FAC ¶ 12).

Plaintiff claims that on January 20, 2015, pursuant to Cal. Welf. & Inst. Code § 5250(a), Dr. Gessesse certified Plaintiff for intensive treatment at Community Hospital Long Beach for up to an

additional 14 days. However, according to the complaint, Dr. Gessesse did not comply with the legal requirements for such certification. (FAC ¶ 13). Plaintiff was hospitalized for two additional days beyond the initial 72-hour hold. (Id.).

Plaintiff next asserts that on January 25, 2015, he was at home when he heard voices from the apartment upstairs saying that Plaintiff's friends and family were across the street. (FAC ¶ 14). Plaintiff went across the street on three different occasions, each time asking for a different person and each time being told that person was not there. (Id.). While Plaintiff was walking home following the third incident, Officer Moulton and another unknown officer stopped Plaintiff, and Officer Moulton directed Plaintiff to sit on the curb while Moulton made inquiries at the house Plaintiff had visited. (Id.). Thereafter, Officer Moulton searched and handcuffed Plaintiff and then transported Plaintiff to Community Hospital in Long Beach without reading him the "required advisement[.]" (Id.). The 5150 application Officer Moulton submitted to detain Plaintiff for psychiatric evaluation and treatment contained false and exaggerated statements made to justify the detention. (FAC ¶ 14 & Exh. D). Plaintiff was placed on a 72-hour hold based solely on the 5150 application. (FAC ¶ 14).

Plaintiff states that on January 30, 2015, Officers Moreau and Nadal as well as two unidentified female officers responded to an emergency call at Plaintiff's residence after someone pulled the fire alarm next to Plaintiff's home. (FAC ¶ 15). Plaintiff,

who was returning from a walk, encountered the officers near the building's front entrance, and Officer Moreau directed Plaintiff to remain on the front porch, which prevented Plaintiff from returning home. (Id.). Officer Moreau questioned Plaintiff about his medication compliance and searched and handcuffed Plaintiff. (Id.). Officers Moreau and Nadal then drove Plaintiff to Community Hospital in Long Beach, where, without providing Plaintiff with the "legally-required advisement[,]" Officer Moreau completed a 5150 application that, among other things, falsely reported the fire exit was again blocked. (FAC ¶ 14, Exh. E). Officer Moreau concluded Plaintiff was a gravely disabled adult because Plaintiff did not have any electricity in his unit. (Id.). However, Plaintiff claims the only accurate statement on the 5150 application was that a fire alarm had been pulled. (Id.). Plaintiff was placed on a 72-hour hold based solely on the 5150 application. (FAC ¶ 14).

Plaintiff claims that on February 1, 2015, pursuant to Cal. Welf. & Inst. Code § 5250(a), Dr. Kurjian certified Plaintiff for intensive treatment at Community Hospital Long Beach for up to an additional 14 days without completing the legally required evaluation. (FAC ¶ 16). Dr. Kurjian recommended a regimen of anti-psychotic medication for Plaintiff, which required Plaintiff's consent, but Plaintiff declined to provide this consent. (Id.). According to the complaint, in an effort to coerce Plaintiff into providing consent, Dr. Kurjian showed Plaintiff a petition to determine Plaintiff's capacity to refuse anti-psychotic medication, and Plaintiff was informed his

8

involuntary hospitalization would be extended until Plaintiff provide consent to injectable anti-psychotic medication. (Id.). Dr. Kurjian's actions kept Plaintiff hospitalized for an additional four days beyond the initial 72-hour hold. (Id.).

Based on these allegations, Plaintiff raises a Fourth Amendment claim against Officers Moreau, Nadal and Moulton (Claim One) and a second Fourth Amendment claim against Doctors Gessesse and Kurjian (Claim Two). (FAC ¶¶ 17-22). Plaintiff seeks compensatory damages. (Id. ¶ 23).

## III.

### STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1121-22 (9th Cir. 2013). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[,]" Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678, "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is

and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555.

"When ruling on a motion to dismiss, [the court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Colony Cove Props., LLC v. City of Carson, 640 F.3d 948, 955 (9th Cir. 2011) (citations, footnote, and internal quotation marks omitted). The court must accept the complaint's allegations as true, Erickson, 551 U.S. at 93-94; Twombly, 550 U.S. at 555-56, construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005).

However, the court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006). Likewise, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678; Stapley v. Pestalozzi, 733 F.3d 804, 809 (9th Cir. 2013).

Pro se pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. Erickson, 551 U.S. at 94; see also Hebbe v. Pliler, 627 F.3d 338,

342 (9th Cir. 2010) ("Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal.").

Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

**IV.**

**DISCUSSION**

The Fourth Amendment protects the "[t]he right of . . . people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied[.]" Brendlin v. California, 551 U.S. 249, 254 (2007) ((citations, internal quotation marks and emphasis omitted). Seizure of a person alleged to be mentally ill "is analogous to a criminal arrest and must therefore be supported by probable cause." Maag v. Wessler, 960 F.2d 773, 775-76 (9th Cir. 1991) (per curiam); Bias v. Moynihan, 508 F.3d 1212, 1220 (9th Cir. 2007).

In this case, Defendants repeatedly seized Plaintiff under Cal. Welf. & Inst. Code § 5150, which provides that "an officer may detain any person the officer determines, 'as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled'" and "[i]f such a determination is made, the officer may place the person at a county-designated facility for a '72-hour treatment and evaluation.'" Bias, 508 F.3d at 1220 (quoting Cal. Welf. & Inst. Code § 5150). "Probable cause exists under section 5150 if facts are known to the officer 'that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself.'" Id. (quoting People v. Triplett, 144 Cal. App. 3d 283, 287-88 (1983)).

Defendants argue they are entitled to dismissal of this action because probable cause existed as to each and every detention of Plaintiff. (See Motion at 8-13). However, broadly construing Plaintiff's allegations because he is a pro se litigant, and applying the standard that the court must accept the allegations as true, Plaintiff's FAC sufficiently alleges his Fourth Amendment rights were violated when Defendants repeatedly detained him without probable cause. For example, Plaintiff alleges that the January 17, 2015 detention occurred when Officers Moreau and Nadal visited Plaintiff's residence as he was preparing to go out, asked Plaintiff about a blocked fire exit and blocked internal door, and placed Plaintiff in custody without even allowing him to respond

to their questions.⁵ (FAC at 6). Plaintiff further claims that Officer Nadal – the officer who Plaintiff alleges completed the 5150 application⁶ – did not substantiate his conclusions that detention was justified, and Plaintiff was placed on a 72-hour hold due solely to the 5150 application. (Id.). Similarly, Plaintiff alleges he was returning from a walk on January 30, 2015 when Officers Moreau and Nadal detained him because a fire alarm had been pulled next to Plaintiff's residence. (FAC ¶ 15). Plaintiff also asserts that Officer Moreau questioned Plaintiff about his medication compliance and demanded to see Plaintiff's medication, but would not allow Plaintiff into his home, and that the 5150 application Officer Moreau completed was inaccurate except for the statement that a fire alarm was pulled.⁷ (FAC ¶ 15 & Exh. E).

To survive Defendants' motion, Plaintiff must allege facts to show that these individual defendants lacked probable cause to detain him under Section 5150. Courts have found a pleading to

---

⁵ The 5150 application states that Plaintiff "called the SHPD today because he was concerned about his upstairs neighbors[,]" (FAC, Exh. C), but Plaintiff claims this statement is false (FAC ¶ 12), and the Court accepts Plaintiff's allegation in ruling on the pending Motion.
⁶ The 5150 application indicates that Officer Nadal gave Plaintiff the requisite advisement, but the form also appears to be signed by Officer Moreau. (See FAC, Exh. C).
⁷ Defendants suggest that since Plaintiff asserts that physicians ultimately certified Plaintiff for further treatment following the detentions on January 17, 2015 and January 30, 2015, there was probable cause to detain Plaintiff on those dates. However, because Plaintiff alleges the certifying physicians – Drs. Gessesse and Kurjian – did not independently evaluate Plaintiff's mental health or otherwise comply with certification requirements (see FAC ¶¶ 13, 16), the certifications provide no basis for judgment in Defendants' favor at this stage of the proceedings.

13

satisfy this showing even with allegations less compelling than those of the instant complaint.[8] See Haines v. Brand, 2011 WL 6014459, *8 (N.D. Cal. 2011) (denying motion to dismiss for lack of probable cause); cf. Bias, 508 F.3d at 1220 (finding probable cause to detain Bias under § 5150 where: Bias had written a letter threatening to kill herself; Bias responded to the detaining officer's question of whether she was going to hurt herself by saying "she would do 'whatever' she wanted"; Bias told the detaining officer she feared a terrorist was going to kill her; and the detaining officer observed that Bias appeared depressed and did not have family at home to watch her); LeFay v. LeFay, 673 F. App'x 722, 724 (9th Cir. 2016) (detaining officer "had probable cause to place [the plaintiff] on a section 5150 mental health hold" when the officer was informed the plaintiff "was delusional, had not eaten in days, . . . was in a 'gradual mental decline[,]'" and was accusing her husband of stealing her purse and poisoning her food, the officer confirmed with the plaintiff that she had not eaten in three days, did not remember when she last consumed liquid, and was concerned her husband was stealing her purse, and the officer observed the plaintiff had trouble walking, appeared malnourished and dehydrated, and was wearing dirty clothing, as if

---

[8] Moreover, such cases are typically decided at summary judgment or trial, not on a motion to dismiss. Indeed, Defendants have not cited a single case in which a court has granted a motion to dismiss when faced with allegations similar to Plaintiff's claims. Rather, the cases Defendants cite addressing probable cause for detention under Cal. Welf. & Inst. Code § 5150 – such as Bias, Brown v. Cnty. of San Bernardino, __ F. Supp. 3d __, 2017 WL 1398639 (C.D. Cal. 2017), LeFay v. LeFay, 2015 WL 106262 (E.D. Cal. 2015), affirmed by, 673 F. App'x 722 (9th Cir. 2016), and MacLellan v. Cnty. of Alameda, 2014 WL 793444 (N.D. Cal. 2014) – were all decided on summary judgment after development of the record.

14

she had not changed in several days); Triplett, 144 Cal. App. 3d at 288 (probable cause for detention under § 5150 when person detained was intoxicated, weeping, and there were "obvious physical signs of a recent suicide attempt").

Accordingly, the pending Motion must be denied because the allegations in Plaintiff's FAC are more than sufficient to state a Fourth Amendment claim against Officers Moreau, Moulton and Nadal. See Haines, 2011 WL 6014459 at *8 ("Plaintiff has sufficiently pled a cause of action under the Fourth Amendment that Defendant Brand lacked probable cause to detain him" when "there are no allegations in Plaintiff's complaint (construed in Plaintiff's favor) establishing that Plaintiff evinced signs of disordered thinking, verbal or physical outbursts, or signs of previous or current attempts to harm himself."). However, the denial of the motion to dismiss is without prejudice to Defendants' renewal of these arguments on a motion for summary judgment.

\\
\\
\\
\\
\\
\\
\\
\\
\\

## V.

## ORDER

For the foregoing reasons, the Motion to Dismiss (Dkt. No. 54) is DENIED, and Defendants Moreau, Moulton, and Nadal shall answer the Fourth Amended Complaint no later than fourteen (14) days from the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

DATED: October 26, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS ORDER IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**

.